JUDGE SCHEINDLIN

**11 CIV 2331**

427-10/DPM/MAM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Don P. Murnane, Jr.
Manuel A. Molina

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STOLT TANKERS BV,

     Petitioner,

 - against -

KLABIN S.A.; SUZANO PAPEL E
CELULOSE S.A.; ALLIANZ SEGUROS, S.A.;
and ACE SEGURADORA S.A.,

     Respondents.
------------------------------------------------------------x

11 Civ __ ( )

PETITION TO COMPEL
ARBITRATION PURSUANT TO
9 U.S.C. §§ 1 – 307 AND FOR
AN ANTI-SUIT INJUNCTION

RECEIVED APR 05 2011 U.S.D.C. S.D.N.Y. CASHIERS

   Petitioner, STOLT TANKERS BV (hereinafter "Stolt Tankers"), by its attorneys Freehill Hogan & Mahar, LLP, as and for its Petition against Respondents, KLABIN S.A.; SUZANO E PAPEL CELULOSE S.A.; ALLIANZ SEGUROS, S.A.; and ACE SEGURADORA, S.A. (hereinafter collectively "Respondents"), alleges upon information and belief as follows:

**JURISDICTION**

   1.  This Petition to compel arbitration is made pursuant to 9 U.S.C. § 1 *et seq.*, concomitant with an application for the issuance of an anti-suit injunction against the Respondents, restraining them from continuing legal proceedings they have wrongfully initiated

364145.1

in Brazil against Stolt Tankers, in violation of the parties' written agreement to arbitrate at New York.

2.     This is a maritime and admiralty action within the jurisdiction of the United States District Courts (28 U.S.C. § 1333) and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

### THE PARTIES

3.     Petitioner Stolt Tankers, at all times hereinafter mentioned, was and still is a foreign business entity organized and existing under the laws of a foreign country, with an office in care of Stolt-Nielsen USA Inc., located at 800 Connecticut Avenue, Norwalk, CT 06854.

4.     Respondent KLABIN S.A. (hereinafter "Klabin"), at all times hereinafter mentioned, was and still is a legal entity duly organized and existing under and by virtue of the laws of Brazil with an office and place of business at Av. Olinkraft, No. 6.602, Otacilo Costa SC/Brazil 88.540-000. At all times relevant hereto, Klabin was a named party and consignee to two bills of lading issued by Stolt Tankers, to wit, Tanker Bill of Lading Nos. 482A and 482B, both dated February 11, 2009. (Exhibit A annexed hereto.)

5.     Respondent SUZANO PAPEL E CELULOSE S.A. (hereinafter "Suzano"), at all times hereinafter mentioned, was and still is a legal entity duly organized and existing under and by virtue of the laws of Brazil, with an office and place of business at Rua Dr. Prudente de Moraes, No. 3.240, Suzano SP/Brazil 08.613-900. At all times relevant hereto, Suzano was a named party and consignee to a bill of lading issued by Stolt Tankers, to wit, Tanker Bill of Lading No. 482C, dated February 11, 2009. (Exhibit B annexed hereto.)

6.     Respondent ALLIANZ SEGUROS S.A. (hereinafter "Allianz") at all times hereinafter mentioned, was and still is a legal entity duly organized and existing under and by

virtue of the laws of Brazil with an office and place of business at Rua Luis Coelho, No. 26, 9th Floor, São Paulo, SP/Brazil 01.309-900, and the purported subrogated underwriter of Klabin.

7. Respondent ACE SEGURADORA S.A. (hereinafter "Ace") at all times hereinafter mentioned, was and still is a legal entity duly organized and existing under and by virtue of the laws of Brazil with an office and place of business at Av. Paulista, No. 1294, 17th Floor, São Paulo, SP/Brazil 01.310-915, and the purported subrogated underwriter of Suzano.

## THE NATURE OF THE PARTIES' DISPUTE

8. On or about January 19, 2009, Stolt Tankers, as Owners, and non-party Tricon Shipping Inc. ("Tricon"), as Charterer, entered into a voyage charter party on an amended ASBATANKVOY form (hereinafter "the Charter Party"). The Charter Party stipulated the carriage by Stolt Tankers of "18,000 up to 25,000 mts in chopt [Charterer's option]" of caustic soda from Point Comfort, Texas to Santos, Brazil. (Exhibit C annexed hereto.)

9. The Charter Party also provided for the application of U.S. law and arbitration of all disputes at New York. [Exhibit C (Fixture Recap; Part II, Clause 24; and Rider Clause 37).] The Fixture Recap states, "U.S. law" and "Arbitration New York." Part II, Clause 24 of the ASBATANKVOY tanker voyage charter party form expressly states in pertinent part as follows:

> 24. ARBITRATION. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen . . . . If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person with precisely the same force and effect as if said second arbitrator has been appointed by the other party.

10. Accordingly, pursuant to the unambiguous terms of the Fixture Recap and for purposes of Clause 24, Stolt Tankers and Tricon, selected "the City of New York," as the proper place of arbitration, with the application of "U.S. law." [1]

11. On or about February 11, 2009, Tricon loaded onboard the M/T STOLT EXCELLENCE the following parcels of caustic soda: (a) 4,183.514 MT; (b) 2,110.978 MT and (c) 6,294.493. Stolt Tankers issued, respectively, Tanker bills of lading Nos. 482A, 482B and 482C. (Exhibits A and B annexed hereto.)

12. Stolt Tankers' bills of lading Nos. 482A and 482B expressly identified Klabin as "Consignee." Stolt Tankers' bill of lading No. 482C expressly identified Suzano as "Consignee." (Exhibits A and B annexed hereto.)

13. Each of the three Stolt Tankers bills (Nos. 482A, 482B and 482C) expressly and unambiguously incorporate by reference the terms and conditions of the Charter Party by date, parties and place of execution, including explicitly on the face of each bill of lading the New York arbitration clause, stating:

> *This shipment is carried under and pursuant to the terms of the Charter 01 19 2009 at Houston, Texas between STOLT TANKERS, BV and TRICON SHIPPING as Charterer, and all the terms whatsoever the said Charter, including the arbitration clause,* except the rate and payment of freight specified therein, *apply to and govern the rights of the parties concerned in this shipment.* Copy of the Charter may be obtained from the Shipper or Charterer."

---

[1] The Charter Party Rider Clause 37 reinforces the agreement to arbitrate in New York as the default venue in the event the parties inadvertently fail to select a place for arbitration:

37. Arbitration

*If no selection is made, New York shall be deemed to have been selected* under Part I, Clause K. In the written demand for arbitration, the party calling for arbitration shall identify the nature of the dispute(s) as well as its arbitrator-appointee by name and address. If the other party within (20) days after service of the demand upon it, shall not serve written notice of its appointment and the identity by name and address of the second arbitrator, the first party shall have the right without further notice to appoint the second arbitrator, who shall be a disinterested person. (Emphasis supplied.)

(Exhibits A and B annexed hereto; emphasis supplied.)

14. The STOLT EXCELLENCE sailed for the port of Santos, Brazil on or about February 11, 2009. The vessel arrived at Santos on or about March 3, 2009, whereupon Klabin and Suzano alleged that a portion of the cargoes of caustic soda had been damaged while onboard the vessel.

15. It was not until December 16, 2009 that Stolt Tankers was notified by Tricon of a claim brought by Respondents Klabin and Suzano against Tricon which Tricon has, in turn, presented against Stolt Tankers. (Exhibit D annexed hereto, December 16, 2009 email from brokers.)

16. On January 27, 2010 an entity named Zass Internacional Consultoria Ltda. ("Zass") advised Stolt Tankers that it was acting on behalf of Respondent Allianz. (Exhibit E.) Zass further indicated that it had been authorized by Respondent Allianz, as a purported subrogated underwriter, to commence recovery actions against Stolt Tankers based on Respondent Klabin's cargo claim. (Exhibit E annexed hereto.) Respondent Allianz's claim was based on Stolt Tankers bill of lading No. 482B.

17. On July 28, 2010, Zass advised Stolt Tankers that it was also acting on behalf of Respondent Ace, the purported subrogated underwriter of Respondent Suzano, to seek recovery for Suzano's cargo damage claim. Respondent Ace's claim was based on Stolt Tankers bill of lading No. 482C. (Exhibit F annexed hereto.)

18. Although Stolt Tankers and Zass communicated throughout most of 2010 concerning the Respondents' cargo claims, Stolt Tankers was unable to sufficiently determine the nature, extent and quantum of the damages sought to be recovered. As a result, Stolt Tankers retained Brazilian counsel, the Law Offices Carl Kincaid, and instructed them to communicate

with Zass to clarify the basis for the underwriters' claims and obtain relevant information and documentation to better asses the merits of the disputes.

19. Ultimately, as Stolt Tankers and Zass could not resolve Respondents' cargo claims, Zass threatened to commence lawsuits against Stolt Tankers in Brazil.

20. In response to Zass' threats, on December 30, 2010, Stolt Tankers, through undersigned counsel, demanded arbitration in New York against, Klabin, Suzano, Ace, Allianz and Tricon. Pursuant to the requirements of Clause 24 of the Charter Party, Stolt Tankers served a written Arbitration Demand upon the officers of Respondents and Tricon, via facsimile and Federal Express. (Exhibit G annexed hereto.)

21. As evidenced by the facsimile confirmations, Respondents and Tricon received the Stolt Tankers Arbitration Demand on December 30, 2010. (Exhibit H annexed hereto.)

22. As evidenced by the Federal Express Tracking information, the original Arbitration Demands were delivered to the respective addressees as follows: (a) Tricon, January 3, 2011; (b) Suzano, January 5, 2011; (c) Ace, January 10, 2011; and (d) Allianz, January 10, 2011. (Exhibit I annexed hereto.)

23. Because Federal Express subsequently advised that it did not deliver at Klabin's address, Stolt Tankers requested its Brazilian counsel to serve the Arbitration Demand on Klabin. Service of the Stolt Tankers Arbitration Demand was accomplished on January 7, 2011. (Exhibit J annexed hereto.) As a courtesy, Stolt Tankers also delivered a copy of the Arbitration Demand via electronic mail and Federal Express to Zass. (Exhibit K annexed hereto.)

24. On January 19, 2011, in response to the Stolt Tankers Arbitration Demand, Tricon, through its counsel, appointed its arbitrator. (Exhibit L annexed hereto.)

25. By contrast, and in violation of their contractual obligations with Stolt Tankers, Respondents confirmed receipt of the Stolt Tankers Arbitration Demand but failed to appoint their arbitrator and refused to arbitrate. Instead, Respondents, via a letter authored by Zass, dated January 18, 2011, challenged Stolt Tankers' right to demand arbitration in New York. In support of their position that Respondents were not bound to arbitrate, the Zass letter advanced various legal arguments that the courts of this Circuit have repeatedly rejected. Significantly, in attempting to persuade Stolt Tankers to withdraw its Arbitration Demand, Respondents threatened "to start the necessary remedies in order to guarantee their rights" in Brazil. (Exhibit M annexed hereto.)

26. In an effort to avoid unnecessary motion practice and the risk of having two fora adjudicate the merits of Respondents' claims, Stolt Tankers's undersigned counsel promptly responded per letter dated January 25, 2011. (Exhibit N annexed hereto.) The letter demonstrated in detail, with citation to governing legal authorities, that Respondents' position lacked merit under well-settled principles of the applicable U.S. law. Undersigned counsel again insisted that Respondents proceed to arbitration and placed Respondents on notice that Stolt Tankers would seek appropriate legal relief, including but not limited attorneys' fees and monetary sanctions, if Respondents persisted with their failure to proceed to arbitration.[2]

27. To date, Respondents have ignored Stolt Tankers' Arbitration Demand and failed to nominate their arbitrator. Instead, Respondents have also carried out their threat by commencing legal proceedings in Brazil in the Courts of Sao Paulo against Stolt Tankers for the very same claims for cargo damage that are the subject of the New York arbitration. (Declaration

---

[2] On February 8, 2011, Suzano's in-house counsel, Mr. Luiz Cesar Pizzotti, sent a telefax letter to undersigned counsel advising that, based on the January 18 Zass letter, his understanding was that Suzano was not required to participate in New York arbitration. (Exhibit O.) The following day, Stolt Tankers' counsel advised Mr. Pizzotti that his "understanding" concerning Suzano's contractual obligation to arbitrate was incorrect under the governing U.S. law, as was demonstrated in the January 25 response-letter to Zass. (Exhibit P.)

of Iwam Jaeger, Jr., dated April 1, 2011 ("Jaeger Decl."), ¶¶1-6 and Exhibits A and B annexed thereto.)

**RELIEF REQUESTED**

A. **The Issuance of an Order Compelling Arbitration**

28. The Charter Party's Arbitration Clause was effectively and expressly incorporated by reference into each of the three Stolt Tankers Bills of Lading which are the subject of this Petition.

29. Klabin and Suzano were clearly identified as consignees in each of the subject Stolt Tankers Bills of Lading.

30. By reason of the foregoing, and under well-established principles of U.S. law, Klabin and Suzano are contractually bound to arbitrate their cargo claims with Stolt Tankers. Similarly, Ace and Allianz, having step into the shoes of their insureds in their capacity as subrogated underwriters, are equally obligated to arbitrate in New York.

31. Stolt Tankers has demanded New York arbitration and the written Arbitration demand was duly made upon and delivered to all of the Respondents in accordance with the commercial norms and requirements of the Arbitration Clause contained in the Charter Party.

32. Stolt Tankers has appointed its arbitrator, Mr. Richard M. Ziccardi, and non-party Charterer Tricon has also nominated its arbitrator, Mr. Klaus C.J. Mordhorst.

33. Stolt Tankers has duly performed all of its obligations in accordance with the terms and conditions of the governing Charter Party.

34. Respondents, in violation of their contractual obligations to arbitrate under the Charter Party and the Federal Arbitration Act, have wrongfully ignored Stolt Tankers'

Arbitration Demand and have instead commenced legal actions in Brazil in violation of their contractual obligations. (Jaeger Decl., Exhibits A and B.)

35. Respondents are required to appoint their arbitrator, pursuant to the terms and conditions of the Charter Party's Arbitration Clause, within twenty (20) days, failing which Stolt Tankers is entitled to appoint an arbitrator on behalf of the Respondents, as per the Arbitration Clause. Accordingly, Petitioner Stolt Tankers respectfully requests that the Court direct Respondents to proceed immediately to arbitration as required by the Charter Party.

36. Respondents' failure to comply with the unequivocal agreement of the parties to arbitrate has necessitated the making of this application. Accordingly, Stolt Tankers requests that it be awarded the costs and attorneys' fees incurred in making this Petition.

### B. The issuance of an Anti-Suit Injunction Against Respondents

37. The Charter Party contains an unambiguous Arbitration Clause requiring that "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York." Respondents' claims for alleged damage to the cargoes of caustic soda is properly the subject of arbitration.

38. Respondents are currently litigating in Brazil the exact same claims that are the subject of the New York arbitration demanded by Stolt Tankers. (Jaeger Decl., ¶¶1-6; Exhibit A and B.) Further, both the actions in Sao Paulo and the arbitration in New York involve the same parties.

39. In addition, the resolution by arbitration of the parties' dispute is dispositive of the Brazilian proceedings.

40. Federal policy strongly favors the enforcement of arbitration agreements, especially when an arbitration clause, such as the one at issue here, is amply worded to cover "any and all differences and disputes of whatsoever nature arising out" of the Charter Party.

41. The litigation initiated by Respondents in Brazil is a deliberate attempt to evade arbitration, and therefore, threatens the strong federal public policy that favors the liberal enforcement of arbitration agreements.

42. Indeed, to the extent that this Court directs Respondents to arbitrate at New York, the issuance of the anti-suit injunction sought here is all the more necessary to protect the judgment of this Court compelling arbitration.

43. Moreover, by virtue of the fact that Brazilian Courts do not apply the provisions of the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 (at note), which would govern the resolution of Respondents' cargo claims in arbitration, it is likely that the adjudication of Respondents' claims in two separate fora will result in inconvenience, expense, inconsistency and a possible race to judgment.[3] (Jaeger Decl., ¶¶8-10.)

44. In light of the foregoing considerations, Stolt Tankers respectfully requests that this Court issue an anti-suit injunction restraining Respondents from pursuing their cargo claims in the Courts of Brazil.

45. Respondents' breach of their contractual obligations to arbitrate in New York through the commencement of legal proceedings in Brazil has caused Stolt Tankers to seek an anti-suit injunction. Accordingly, Stolt Tankers requests that it be awarded the costs and

---

[3] The Fixture Recap to the Charter Party includes a "USA Clause Paramount" which stipulates in pertinent part that: "[t]his Contract of Carriage is subject to the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, and shall have effect subject to the provisions of said Act which shall be deemed incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act." The cargoes herein were shipped from the U.S. and COGSA would thus apply of its own force, *ex proprio vigore*.

attorneys' fees incurred in making this Petition. Stolt Tankers hereby expressly reserves its rights to seek the imposition of monetary sanctions against Respondents as well as the recovery of all costs and legal fees incurred in defending the action in Brazil if Respondents violate any injunction entered by this Court.

27. No previous application has been made to this Court or any other Court or Judge, for the orders and relief sought herein.

WHEREFORE, Petitioner prays in accordance with the provisions of the Federal Arbitration Act, that this Honorable Court enter an Order:

(1) directing that Respondents proceed with arbitration in accordance with the Charter Party, dated January 19, 2009;

(2) directing that Respondents, within twenty (20) days of this Court's order, appoint an arbitral nominee in accordance with the requirements of the Charter Party's Arbitration Clause, failing which, Petitioner will be permitted to appoint a second arbitrator on Respondents' behalf;

(3) enjoining Respondents KLABIN S.A., SUZANO PAPEL E CELULOSE S.A., ACE SEGURADORA S.A. and ALLIANZ SEGUROS, S.A. from continuing the legal actions they have commenced against Stolt Tankers in Brazil;

(4) directing Respondents KLABIN S.A., SUZANO PAPEL E CELULOSE S.A., ACE SEGURADORA S.A. and ALLIANZ SEGUROS, S.A. to take all steps necessary, forthwith, to cause the pending actions in Brazil to be withdrawn and dismissed; and

(5) awarding Petitioner the costs and attorneys' fees for this Petition and such other and further or different relief as the court may deem just and proper in the circumstances.

Dated: New York, New York
      April 5, 2011

                FREEHILL HOGAN & MAHAR, LLP
                Attorneys for Petitioner

                By: _____
                     Don P. Murnane, Jr.
                     Manuel A. Molina
                     80 Pine Street
                     New York, NY  10005
                     (212) 425-1900