UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

STOLT TANKERS BV,                                    **11 CIV. 2331  (SAS)**

                      Petitioner,

   -against-

KLABIN S.A.; SUZANO PAPEL E
CELULOSE S.A.; ALLIANZ SEGUROS, S.A.;
and ACE SEGURADORA S.A.,

                     Respondents.

-------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW OF STOLT TANKERS BV IN FURTHER SUPPORT OF PETITION TO COMPEL ARBITRATION <u>AND FOR AN ANTI-SUIT INJUNCTION</u>

 

FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, NY  10005-1759
Attorneys for Petitioner

Don P. Murnane, Jr.
Manuel A. Molina

    *Of Counsel*

STOLT TANKERS BV ("Stolt Tankers") hereby submits this Reply Memorandum of Law in further support of its Petition to Compel Arbitration and for an Anti-Suit Injunction and in opposition to the Memorandum of Law untimely filed on April 19, 2001 ("Opp. Memo) by Respondents ALLIANZ SEGUROS, S.A.and ACE SEGURADORA, S.A. ("Respondents").

## PRELIMINARY STATEMENT

In violation of the Court's April 11, 2011 Order, Respondents served and filed their opposition papers a day after they were due. The Court should therefore summarily reject Respondents' opposition as untimely.

In any event, Respondents deliberately ignore the applicable law and cobble together a series of arguments devoid of any merit that, at best, betray a complete misunderstanding of the settled law in this Circuit. It remains undisputed that the Stolt Tankers bills of lading in "unmistakable language" expressly incorporated all of the provisions of the January 19, 2009 Charter Party, including specifically and expressly the New York arbitration clause. The Court should therefore compel all of the Respondents to arbitrate at New York.

Finally, Respondents' sole challenge to the anti-suit injunction is that Stolt Tankers has not satisfied the "same party" threshold requirement of the *China Trade* test because it is Stolt Tankers' Brazilian affiliate that has been named a party in the Sao Paulo actions. Yet, Respondents themselves readily concede that their decision to sue the Brazilian affiliate was chiefly based on the fact that it was part of the Stolt Nielsen Limited group of companies. As the settled jurisprudence of this Circuit establishes, this reason is more than sufficient to meet the

1

368172.1

"same party" requirement. The Court should therefore also issue the requested anti-suit injunction.

## ARGUMENT

### POINT I

### RESPONDENTS' OPPOSITION IS  UNTIMELY AND SHOULD BE REJECTED BY THE COURT

Pursuant to the Court's April 11, 2011 Order, Respondents were required to file and serve opposition papers "on or before 5:00 p.m. on April 18, 2011."  Respondents, in violation of that Order, filed their opposition to the Petition on April 19, at 1:29 pm.  Accordingly, Respondents' opposition is untimely and should be rejected by this Court.

### POINT II

### STOLT TANKERS IS A PARTY TO THE JANUARY 19, 2009 CHARTER AT ISSUE HERE

Respondents contend that Stolt Tankers is not entitled to demand New York arbitration because the Fixture Recap "identifies the owners as 'SNTG BV,' and not Stolt Tankers BV." (Opposition Memo at 4).  This contention is meritless, as "SNTG BV" is the same  company as "Stolt Tankers BV."

As demonstrated by the Reply Declaration of Mr. Daniel Carr,  Stolt Tankers' Assistant General Counsel, the abbreviation "SNTG BV" means Stolt-Nielsen Transportation Group B.V., which changed its legal name in 2007 to "Stolt Tankers BV."  (Reply Declaration of Daniel Carr, dated April 20, 2011, ¶4, and Exhibit A attached thereto.)    Accordingly, Stolt Tankers is lawfully entitled to demand and compel arbitration at New York.

368172.1

## POINT III

### THE FIXTURE RECAP UNAMBIGUOUSLY STIPULATES
### NEW YORK ARBITRATION

Equally without merit and frivolous is Respondents' contention that Stolt Tankers has not identified the January 19, 2009 Charter Party in its Petition. This is simply false. The Charter party is Exhibit C to the Petition. Significantly, Respondents do not, and cannot, contest the well-settled law that a fixture recap constitutes a binding agreement between the parties. *Great Circle Lines Ltd. v. Matheson & Co. Ltd.*, 681 F.2d 121 (2d Cir. 1992); *U.S. Titan, Inc., v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135 (2d Cir. 2001); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp. 2d 334 (S.D.N.Y. 2007). The STOLT EXCELLENCE Fixture Recap unambiguously stipulates "General Average/Arbitration New York." (Petition Exhibit C.) Accordingly, the Fixture Recap as well as the companion documents that it incorporated by reference constitute the Charter Party. *Safic Alcan & Cie. v. M/T KASCO*, 565 F. Supp. 2d 519, 521 (S.D.N.Y. 2008) ("the **final contract** between the parties consists of the ***Kasco Recap plus those outside documents*** that the Kasco Recap ***incorporates by reference. Accordingly, the Court looks first to the plain language of the Recap***.") (Emphasis supplied; citations omitted.)

Here, the Fixture Recap states, "All other terms as agreed on the Stolt Protector which have been attached." (Petition Exhibit C.) Attached to the Recap are 14 pages containing the "Tricon Shipping Inc. Shipping Clauses" Further, page 1 of those Tricon "Shipping Clauses" unambiguously provides:

3

> **ASBATANKVOY**
> This document is to *be combined with ASBATANKVOY (October 1977)*.  All references to "Part" in this document refer to information intended to be shown in ASBATANKVOY (October 1977) *as part of the fixture*.

(Petition, Exhibit C; emphasis supplied.)

Clearly, the parties intended the ASBATANKVOY standard charter party form (October 1977) to be part of the Charter Party, with the Fixture Recap and the Tricon "Shipping Clauses amending the standard printed form where appropriate.  *M/T KASCO*, 565 F. Supp. 2d at 520-22.[1]  It is ludicrous for Respondents to argue that, in light of the evidence and applicable settled law, there is "no way of knowing whether all of these terms now relied upon by Stolt are, in fact, the terms of the Stolt Protector." (Opp. Memo at 2).[2]

Equally devoid of any merit is Respondents' argument that the phrase in the Fixture Recap "General Average/Arbitration New York" means that only disputes involving General Average are required to be arbitrated.  This argument has been rejected by this Court. *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp. 2d 334, 338, n.8, 345 (S.D.N.Y. 2007).[3]  The shorthand phrase "General Average/Arbitration New York" is intended simply to

---

[1]  In addition, Clause 42 ("Administration Clause") stipulates in pertinent part that "No formal written and signed Charter Party will be prepared unless specifically requested by either party." (Petition, Exhibit C.)  As Mr. Carr attests, there was no  "formal written and signed" Charter Party.  (Reply Carr Decl.,¶6.)

[2]  Respondents also contend that "Petitioner has omitted ASBATANKVOY Part I" as an Exhibit.  As Exhibit C to the Petition demonstrates, the standard ASBATANKVOY charter party form (October 1977) has been fully submitted to the Court (Preamble, Part I and Part II).  Respondents' argument is also belied by the fact that Respondents admit that Exhibit C contains a "blank 'Tanker Voyage Charterparty' form followed by 'Part II' containing 26 clauses." (Opp. Memo at 2.)  Respondents' argument betrays a misunderstanding of industry practice as well as the law.

[3]  New York arbitral Awards also uniformly reject Respondents' position. *See e.g.  JO MAPLE*, S.M.A. No. 3947 (Arnold, Nergaard, Palmer 2007) (fixture recap incorporating ASBATANKVOY form and containing phrase "GA/ARB New York/US Law/LMAA rules to apply" had typographical "mistake" "[s]ince the parties agreed to New York arbitration, the correct reference should have been to 'SMA rules to apply.'"); *ALPHEUS*, S.M.A. No. 2245 (Berg, Fabrikant Arnold) (recap providing for "GA/ARB NY AMERICAN LAW" "takes precedence over

4

designate the parties' choice, under Clause K, Part I and Clause 24, Part II of the standard

ASBATANKVOY charter party form (October 1977), of their election of London or New York

as the situs for arbitration and General Average claims.   The standard printed form Clause K

states:

> K.  The place of General Average and arbitration proceedings to be London/New
> York (strike out one).

(Petition Exhibit C.)   Clause 24 provides in pertinent part that "[a]ny and all differences and

disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of

New York or in the City of London *whichever place is specified in Part I of this charter* . . . ."

(Emphasis supplied.)

By inserting the phrase "General Average/Arbitration New York" in the Fixture Recap,

the parties unambiguously intended that the "place" for "General Average" **and** "arbitration

proceedings" be New York and that *any* disputes under the Charter "shall be put to arbitration in

the City of New York."   For example, in *BS Sun Shipping*, the parties' fixture recap included the

notation "GA/ARB NYK US LAW" which Judge Baer expressly found to mean that "it provided

for arbitration of *any disputes* arising thereunder in New York."   509 F. Supp. 2d at 338.

Because the fixture recap also incorporated by reference the standard ASBATANKVOY charter

party form, Judge Baer went on to explain in a footnote:

> Clause 24 of the ASBATANKVOY form provides for arbitration in either
> London or New York depending upon the parties' election. . . . The fixture recap,
> as noted, contained the provision 'GA/ARB NYK US LAW' . . .  thus indicating
> arbitration in New York under U.S. law.

---

charter party" executed on ASBATANKVOY form that had selected London in Part 1, Clause K, hence the "agreed
site of arbitration" was New York).

368172.1

509 F. Supp. 2d, 338 n.8.[4]

In light of the undisputed facts and settled applicable law, Stolt Tankers respectfully requests that the Court compel the Respondents to arbitrate their cargo claims at New York.

## POINT IV

### RESPONDENTS SHOULD ALSO BE ENJOINED FROM CONTINUING TO PURSUE THE MERITS OF THEIR CARGO CLAIMS IN THE PENDING ACTIONS IN BRAZIL AND DIRECTED TO TAKE ALL NECESSARY STEPS FORTHWITH TO DISMISS THOSE ACTIONS

In opposing Stolt Tankers' application for an anti-suit injunction, Respondents raise a single argument that has also been squarely rejected by the Second Circuit. Respondents' argument on the law is that Stolt Tankers' affiliate, STOLT NIELSEN BRASIL AFRETAMENTO ("Stolt Brasil"), has been named a party in the Brazilian actions, and accordingly, Stolt Tankers cannot satisfy the "same party" threshold requirement of the *China Trade* test. This argument is without merit.

As stated in the Declaration of Iwam Jaeger, which is not contested by Respondents, Respondents have filed suits in Sao Paulo against Stolt Brasil based solely on its corporate relationship with Stolt Tankers.  (Declaration of Iwam Jaeger, Jr., dated April 1, 2011 ("Jaeger Decl."), ¶4).  Indeed, it is undisputed that in the Brazilian proceedings Respondents have:

- Referred to Stolt Tankers as the "carrier defendant;"

- Averred that "defendant" Stolt Tankers "is a company operating in five continents, with dozens of offices located in 15 countries;

---

[4] In addition, the Charter Party's Tricon Shipping Clause 37 reinforces the agreement to arbitrate in New York as the default venue in the event the parties inadvertently fail to elect a place for arbitration since that Clause expressly stipulates that: "*If no selection is made, New York shall be deemed to have been selected* under Part I, Clause K." Here, of course, the parties did make their selection by including the phrase "General Average/Arbitration New York" in the STOLT EXCELLENCE Fixture Recap.

6

368172.1

- Alleged that Stolt Tankers was hired "to perform the transportation" of cargoes at issue here; and

- Relied upon the Stolt Tankers bills of lading to impose liability against Stolt Brasil.

(Jaeger Decl., ¶5.)

Respondents in fact concede in their convoluted opposition papers that Stolt Brasil's corporate affiliation with Stolt Tankers is the very reason the lawsuits were brought against Stolt Brasil:

> The party named in the Brazilian actions is [Stolt Brasil], not [Stolt Tankers]. That Stolt attempts to insulate itself from liability by using innumerable name permutations is not by accident. However, Stolt cannot be heard to complain when one such permutation is named in a lawsuit, and Stolt certainly should not be permitted to interject itself into the role of one of its affiliated entities only when it serves its interests.

(Opp. Memo at 6.)

Respondents' futile position crucially disregards settled Second Circuit law which is squarely on point on this issue, namely, *Paramedics Electromedicina Comercial Ltda. v. G.E. Medical Sys. Info. Techs. Inc.*, 369 F.3d 645 (2d Cir. 2004). There, the Second Circuit affirmed the district court's ruling that the *China Trade* "same party" requirement was satisfied when the lawsuit in the Brazil court was brought against the petitioner's affiliate precisely because of the companies' aspects of corporate identity:

> ***The decisive point on this record is that GE Brasil is named in the Porto Alegre action chiefly on the basis of its aspects of identity with GEMS-IT. It is undisputed that GEMS-IT and GE Brasil are part of the General Electric group of companies.*** . . . The district court did not abuse its discretion in ruling that the parties to the two actions are thus sufficiently similar to satisfy the threshold requirement of *China Trade*.

369 F.3d at 652 (emphasis supplied).

7

368172.1

Accordingly, Stolt respectfully submits that, as it has satisfied all of the requirements of the *China Trade* test, the Court should grant its application for anti-suit injunction against all of the Respondents herein.

**CONCLUSION**

In light of the foregoing considerations and authorities, STOLT TANKERS BV respectfully requests that this Court grant the instant motion in all respects and enter an Order:

(1)    directing that Respondents proceed with arbitration in accordance with the Charter, dated January 19, 2009;

(2)    directing that Respondents, within twenty (20) days of this Court's order, appoint an arbitral nominee in accordance with the requirements of the Charter's Arbitration clause, failing which, Petitioner will be permitted to appoint a second arbitrator on Respondents' behalf;

(3)    enjoining Respondents KLABIN S.A., SUZANO PAPEL E CELULOSE S.A., ACE SEGURADORA S.A. and ALLIANZ SEGUROS, S.A. from continuing the legal actions they have commenced against Stolt Tankers in Brazil;

(4)    directing Respondents KLABIN S.A., SUZANO PAPEL E CELULOSE S.A., ACE SEGURADORA S.A. and ALLIANZ SEGUROS, S.A. to take all steps necessary, forthwith, to cause the pending actions in Brazil to be dismissed; and

(5)    awarding Petitioner the costs and attorneys' fees for this Petition and such other and further or different relief as the court may deem just and proper in the circumstances.

Dated: New York, New York
April 22, 2011

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner

By: _____
Don P. Murnane, Jr.
Manuel A. Molina

8

368172.1