UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X

STOLT TANKERS BV,

            Petitioner,

- against -

ALLIANZ SEGUROS, S.A. and ACE
SEGURADORA S.A.,

           Respondents.

------------------------------------------------- X

OPINION AND ORDER

11 Civ. 2331 (SAS)

[USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #: ___ / DATE FILED: 6/16/11]

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

      Stolt Tankers BV ("Stolt") petitions to compel Allianz Seguros S.A. ("Allianz") and Ace Seguradora S.A. ("Ace") (collectively, "Respondents") to proceed with arbitration and to enjoin Respondents from proceeding with a lawsuit in the courts of Brazil. For the reasons discussed below, the petition to compel arbitration and enjoin Respondents from proceeding with their suit is granted.

II.   BACKGROUND

      On January 19, 2009, Stolt, as "Owner" of the M/V STOLT EXCELLENCE, and Tricon Shipping Inc. ("Tricon"), as "Charterer," entered into a voyage "Charter Party" on an amended "ASBATANKVOY Charter Party form"

("Asbatankvoy Form").[1]  Specifically, through the Charter's "Fixture Recap,"[2] Stolt and Tricon agreed to the following provisions: (a) application of "U.S. Law;" (b) "Arbitration in New York;" (c) use of the "C/P [charter party] Asbatankvoy" form as the basis for their contractual arrangements; and (d) the inclusion of the "Tricon Shipping Inc. Shipping Clauses" as part and parcel of the Charter.[3]

Part II, Clause 24 of the Asbatankvoy Form, in turn, provides as follows:

> 24. ARTIBRATION. *Any and all differences and disputes of whatsoever nature arising out of this Charter* shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter . . . .[4]

---

[1] Tricon Shipping Clauses, Ex. B to Petition to Compel Arbitration Pursuant to 9 U.S.C. §§ 1-307 and for an Anti-Suit Injunction ("Petition").

[2] Broker's Fixture Confirmation Email ("Fixture Recap"), Ex. A to Petition. A "fixture recap" is the communication, usually between the parties' brokers, that contains or "fixes" the parties' agreement to "main terms" which usually include "the name of the charterer, name of owner, ship and its characteristics, time and place of delivery, duration of charter, place of redelivery, hire rate, printed form upon which the contract is based, *and any other term that a party deems important.*" *Great Circle Lines Ltd. v. Matheson & Co.*, 681 F.2d 121, 125 (2d Cir. 1992) (emphasis added). "A 'recap' communication, or 'fixture,' is recognized throughout the shipping industry as an agreement to a charter party's essential terms." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 148 (2d Cir. 2001).

[3] *See* Fixture Recap.

[4] ASBATANKVOY Charter Party Form ("Asbatankvoy Form"), Ex. C to Petition, at 57 (emphasis added). Section K of Part I of the Asbatankvoy Form in turn sets "[t]he place of General Average and arbitration proceedings to be

On February 11, 2009, Tricon loaded onboard the M/V STOLT EXCELLENCE several quantities of "caustic soda." Stolt then issued "Tanker bills of lading" Nos. 482A, 482B, and 482C,[5] expressly identifying Klabin S.A. ("Klabin") as "Consignee" to bill Nos. 482A and 482B, and identifying Suzano Papel e Celolose S.A. ("Suzano") as "Consignee" to bill No. 482C. Each of the Stolt bills of lading contains the following clause:

> This shipment is carried under and pursuant to the terms of the Charter 01 19 2009 at Houston, Texas between STOLT TANKERS, BV and TRICON SHIPPING as Charterer, and *all the terms whatsoever* of the said Charter, *including the arbitration clause*, except the rate and payment of freight specified therein, apply to and govern the rights of the parties concerned in this shipment.[6]

Upon arrival of the M/T STOLT EXCELLENCE at Santos, Brazil, Klabin and Suzano alleged that a portion of the caustic soda had been damaged. Eventually, Zass Internacional Consultoria Ltda. ("Zass") advised Stolt that it represented Ace and Allianz, the purported subrogated underwriters of Suzano and Klabin, repectively,[7] and that it had been authorized by Ace and Allianz to seek

---

London/New York (strike one out)." *Id.* at 52.

[5]   Bills of Lading, Ex. D to Petition.

[6]   *Id.* (emphasis added).

[7]   Klabin and Suzano were originally named as Respondents in this petition, but have since been dismissed. *See* 5/5/11 Order of Dismissal Only as to Respondent Klabin S.A. [Docket No. 14]; 5/6/11 Order of Dismissal Only as to

recovery against Stolt in subrogation for the cargo claims allegedly paid to their insureds. Stolt engaged Brazilian counsel to deal directly with Zass, but ultimately the parties' efforts to resolve Respondents' claims proved unsuccessful, and Zass threatened to and did commence lawsuits in Brazil against Stolt. In response, Stolt retained counsel to demand that Respondents arbitrate in New York. Respondents have refused to nominate their arbitrator pursuant to the terms of the Charter and Stolt bills of lading. Stolt now moves to compel arbitration and to enjoin Respondents from continuing proceedings in Brazil.

## III.  APPLICABLE LAW

### A.  In Personam Jurisdiction

A party who agrees to arbitrate in New York "must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity."[8] The Second Circuit has repeatedly upheld the rule that arbitration forum clauses confer personal jurisdiction by consent.[9] It is, therefore,

---

Respondent Suzano Papel e Celulose S.A. [Docket No. 16].

[8] *Victory Transp. Inc. v. Comisaria General de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964).

[9] *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith v. Lecopolus*, 553 F.2d 842, 845 (2d Cir. 1977).

"well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York."[10]

Because an insurer's "right of recovery . . . is governed by the same terms as the insured's right of recovery,"[11] an insurer-subrogee "is equally bound by a consent to jurisdiction."[12] Therefore, as long as the arbitration clause "is enforceable, this court has personal jurisdiction over [Respondents] . . . ."[13]

### B.   Service of Process

Where a party has agreed to arbitrate and thus has consented to the jurisdiction of the courts where arbitration is to take place, "the sole function of process" is to notify the other party of the proceedings.[14] In accordance with Rule 4(h)(2) of the Federal Rules of Civil Procedure, the service of process on a foreign corporation abroad must be done in accordance with Rule 4(f). Rule 4(f)(3) states that the corporation can be served "by other means not prohibited by international

---

[10]   *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999).

[11]   *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997).

[12]   *Novorossiyk Shipping Co. v. China Pacific Prop. Ins. Co.*, No. 06 Civ. 2312, 2006 WL 3055964, at *1 (S.D.N.Y. Nov. 16, 2006). *Accord American Bureau of Shipping*, 170 F.3d at 352; *Farrell Lines*, 32 F. Supp. 2d at 126-27.

[13]   *Farrell Lines*, 32 F. Supp. 2d at 127.

[14]   *Victory Transp.*, 336 F.2d at 363.

agreement, as the court orders."[15]

## C.  Arbitrability

### 1.  Incorporation of Arbitration Clauses

Although federal policy favors arbitration, it is a matter of consent under the Federal Arbitration Act, and "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit."[16] Arbitration clauses in charter parties have been invariably interpreted as being "broad" in scope and not restricted or limited to disputes solely between "owners" and "charterers."[17] The Second Circuit

> long ha[s] held that a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement. According to this rule, a charter party provision for such arbitration is binding on the parties to a Bill of Lading that incorporates the Charter Party by reference.[18]

"Where terms of the charter party are . . . expressly incorporated into the bills of lading they are a part of the contract of carriage and are binding . . . just

---

[15]  Fed. R. Civ. P. 4(f)(3).

[16]  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quotation marks omitted).

[17]  See *Ibeto Petrochemicals Indus. Ltd. v. M/T BEFFEN*, 475 F.3d 56, 63 (2d Cir. 2007)*; JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004).

[18]  *Ibeto*, 475 F.3d at 63 (citations and quotation marks omitted).

as they would be if the dispute were between the [original parties to the charter agreement]."[19] To incorporate a charter party clause effectively, "the bill of lading must specifically refer to a charter party and use unmistakable language indicating that it is incorporated."[20]

### 2. Application to Subrogated Insurers

When a maritime insurer has paid a claim to the insured, who in turn has a claim of right under a contract, the insurer "becomes, in effect, the beneficial owner of those rights, entitled . . . to assert the right against the third party."[21] The general rule declares that "[a]n insurer-subrogee stands in the shoes of its insured"[22] and "succeeds to whatever rights or disabilities he may have in the matter."[23] Thus there is "no valid basis in law or equity why an arbitration clause should not be enforced against a subrogee."[24] A petition to compel arbitration

---

[19] *Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687, 688 (2d Cir. 1952).

[20] *Continental Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281, 283 (2d Cir. 2003).

[21] Gilmore and Black, The Law of Admiralty § 2-17 at 91 (2d ed. 1975).

[22] *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 103 (2d Cir. 1992).

[23] *Lumbermans Mut. Cas. Co. v. Borden Co.*, 268 F. Supp. 303, 314 (S.D.N.Y. 1967).

[24] *Id.*

against the insured is "equally valid against the insurer . . . ."[25]  As such, "once the insurer becomes subrogated, it steps into the insured's shoes and essentially becomes a party to the bill of lading.  Its right of recovery from the carrier of the goods is governed by the same terms as the insured's right of recovery, i.e. by the bill of lading."[26]

### D.     Anti-Suit Injunction

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum."[27]  However, "principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint.  That is because an anti-suit injunction, though directed at the litigants, effectively restricts the jurisdiction of the court of a foreign sovereign."[28]

When determining whether to enjoin a foreign action, a court should consider the relationship between the suit at bar and the suit in the foreign jurisdiction.  "An anti-suit injunction against parallel litigation may be imposed

---

[25]     *American Bureau of Shipping*, 170 F.3d at 352.

[26]     *Farrell Lines*, 32 F. Supp. 2d at 127.

[27]     *Paramedics Electromedicina Comercial, Ltda. v. G.E. Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004).

[28]     *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004) (citations and quotation marks omitted).

only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined."[29] If this threshold has been met, the court should also consider the following factors ("*China Trade* factors"):

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's *in rem* or *quasi in rem* jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.[30]

### E.  Sanctions

Under Rule 11(c) of the Federal Rules of Civil Procedure a court can, upon motion or on the court's own initiative, and after notice and a reasonable opportunity to respond, impose monetary sanctions "on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for its violation."[31] Rule 11(b) states that by "presenting to the court a pleading, written motion, or other paper" the attorney certifies that to the best of the person's belief "the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous

---

[29]  *Paramedics*, 369 F.3d at 652 (citing *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)).

[30]  *China Trade*, 837 F.2d at 35.

[31]  Fed. R. Civ. P. 11(c).

argument for extending, modifying, or reversing existing law or for establishing new law."[32]

A party must bring a motion for sanctions "separately from other motions or requests."[33] Alternatively, "[o]n its own initiative, the court may enter an order . . . directing an attorney . . . to show cause why [the attorney] has not violated subdivision (b)."[34]

## IV. DISCUSSION

### A. In Personam Jurisdiction

Respondents' contention that an agreement to arbitrate in New York by the insured does not confer jurisdiction over the insurer is without merit. As discussed below, the arbitration clause in the Fixture Recap specifies New York as the forum for arbitration of any disputes arising out of the Charter Party. Because Klabin and Suzano are parties to the bills of lading, into which the New York arbitration clause was incorporated by reference to the Charter Party using unmistakable language, they are bound by the arbitration clause. Because Klabin and Suzano have thus effectively agreed to arbitrate any disputes arising out of the

---

[32] Fed. R. Civ. P. 11(b)-(b)(2).

[33] Fed. R. Civ. P. 11(c)(1)(A).

[34] Fed. R. Civ. P. 11(c)(1)(B).

transaction in New York, they have consented to the jurisdiction of this Court.[35]

Allianz and Ace are responding to this petition and litigating in Brazil against Stolt only in their roles as subrogees of Klabin and Suzano. As such, their rights and obligations are no different from those of Klabin and Suzano.[36] And because Klabin and Suzano, as subrogors, are parties to the bills of lading and to the arbitration clause, that clause also binds Allianz and Ace as subrogees.[37] Because Allianz and Ace are bound by the New York arbitration clause, this Court, which has the power to compel arbitration in accordance with the clause, may exercise jurisdiction over them.[38] If any party to an arbitration could escape liability by avoiding jurisdiction through simply subrogating its rights to a third party, it would render any arbitration clause meaningless, which surely would not comport with the intention of the parties.[39] The insurers cannot escape their obligations under one clause of the contract — the arbitration clause — while suing under a different one. Given these considerations, and given that Respondents stand "in the shoes of the insured," this Court clearly has personal

---

[35] *See Victory Transp.*, 336 F.2d at 363.

[36] *See Gibbs*, 966 F.2d at 103.

[37] *See American Bureau of Shipping*, 170 F.3d at 352.

[38] *See id.*; *Novorossiysk*, 2006 WL 3055964, at *1.

[39] *See Farrell Lines*, 32 F. Supp. 2d at 126.

jurisdictions over Respondents.

### B. Service of Process

As noted, the sole function of service of process is to give notice to Respondents that proceedings have commenced.[40] Respondents clearly were put on notice, and indeed have defended against the Petition on the merits. Moreover, service of process was made pursuant to an order of this Court[41] in accordance with Rule 4(f)(3). The cases cited in support of Respondents' position that service by electronic mail is insufficient did not involve arbitration proceedings, and are therefore not probative. Although service of process on Respondents would be insufficient to establish personal jurisdiction, it was clearly sufficient to put Respondents on notice. Service of process was therefore proper.

### C. Petition to Compel Arbitration

The parties here clearly intended for any disputes arising out of the agreement to be arbitrated in New York. Part II, Clause 24 of the Asbatankvoy Form provides that

> any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London, whichever place is specified in

---

[40] *See Victory Transp.*, 336 F.2d at 363.

[41] *See* 4/11/11 Order to Show Cause [Docket No. 4].

Part I of this charter . . . .[42]

Part I, Clause K provides "[t]he place of General Average *and* arbitration proceedings to be London/New York (strike out one.)"[43] Although neither place is struck out in Part I, the phrase "General Average/Arbitration New York" in the Fixture Recap clearly indicates New York as the parties' choice of forum. Respondents' argument that this phrase refers only to arbitration of disputes concerning General Average has no merit. The plain reading of the entire contract and this Court's prior jurisprudence dictate that the inclusion of "General Average/Arbitration New York" in the Fixture Recap indicate the parties' unambiguous intent to arbitrate any disputes in New York.[44]

Even without this phrase in the Fixture Recap, however, Clause 37 of the Tricon Shipping Clauses stipulates that "[i]f no selection is made, New York shall be deemed to have been selected under Part I, Clause K."[45] Thus the interpretation of the Fixture Recap is without consequence. Whether the parties made a deliberate choice — which they did through the Fixture Recap — or

---

[42]   Asbatankvoy Form at 57.

[43]   *Id.* at 52 (emphasis added).

[44]   *See BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp 2d 334, 338 (S.D.N.Y. 2007).

[45]   Tricon Shipping Clauses at 13.

whether they made no choice at all, the parties are deemed to have selected New York as the place to arbitrate any disputes arising out of the agreement.

The arbitration clause also applies to Respondents. The arbitration clause is broad in scope.[46] It does not specify that only some parties are bound by it, and is not restricted to any specific issues. The bills of lading, using "unmistakable language,"[47] expressly incorporate "all the terms whatsoever of the said [Asbatankvoy] Charter, including the arbitration clause."[48] Because the arbitration clause in the Asbatankvoy Form was specifically incorporated by reference into each bill of lading, it applies to the consignees specified on those bills of lading — Klabin and Suzano. As the subrogated insurers of Klabin and Suzano, the Respondents are equally bound to arbitrate. The Respondents "stand[ ] in the shoes of the insured,"[49] and cannot escape the arbitration clause any more than the insured.[50] Stolt's motion to compel the Respondents to arbitrate is therefore granted.

### D. Petition for an Anti-Suit Injunction

---

[46] *See Ibeto*, 475 F.3d at 63; *JLM*, 387 F.3d at 172.

[47] *Continental Ins.*, 346 F.3d at 283.

[48] Fixture Recap.

[49] *Gibbs*, 966 F.2d at 103.

[50] *See American Bureau of Shipping*, 170 F.3d at 352.

Petitioner also moves to enjoin Respondents' litigation in Brazil. While this Court has the power to issue an anti-suit injunction, as noted earlier it should only do so if "(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined."[51]

Respondents maintain that the parties in the Brazilian action are different from those in the action before this Court, because in the Brazilian action Stolt Brazil, Stolt's Brazilian affiliate, is named as a defendant.[52] But because Stolt Brazil was named as a defendant in the Brazilian action on the basis of its corporate relationship with Stolt, the *China Trade* "same party" requirement is satisfied.[53]

With regard to the second threshold factor, although this Court will not determine the outcome of the underlying dispute, an order by this Court compelling arbitration will result in a determination of the dispute in the arbitration. The resolution of the case before this Court is therefore clearly

---

[51] *Paramedics*, 369 F.3d at 652.

[52] *See* Respondents' Memorandum of Law in Opposition to Petition to Compel Arbitration Pursuant to 9 U.S.C. §§ 1-307 and for an Anti-Suit Injunction at 4-6.

[53] *See Paramedics*, 369 F.3d at 652.

dispositive of the Brazilian litigation.[54]

These threshold considerations having been met, this Court must address the five *China Trade* factors. Several of these factors counsel in favor of enjoining the Brazilian action. *First*, permitting the Brazilian litigation to continue will frustrate the general federal policy of promoting arbitration. *Second*, the fact that the Brazilian court will not apply the principles of the Carriage of Goods by Sea Act ("COGSA")[55] may result in widely disparate results in these two actions. Indeed, the prospect of a more favorable outcome under Brazilian law seems to be the motivation behind Respondents' effort to litigate in Brazil. This potential disparity, and the race to judgment that it could provoke, weigh in favor of an anti-suit injunction. *Third*, the equitable considerations involved, such as deterring forum shopping, also compel enjoining the foreign action. *Fourth*, it is likely that adjudication of the same issues in two separate actions would result in inconvenience, inconsistency, and a possible race to judgement. As discussed above, given that COGSA will be applicable in the New York arbitration but not in the Brazilian action, the outcomes could be inconsistent. Moreover, because the witnesses and evidence in both actions would likely be the same, there could be

---

[54] *See Ibeto*, 475 F.3d at 64; *Paramedics*, 369 F.3d at 653.

[55] 46 U.S.C. § 30701. *See* 4/1/11 Declaration of Iwam Jaeger, Jr., Stolt's Brazilian Counsel, in Support of Petition to Compel Arbitration Pursuant to 9 U.S.C. §§ 1-307 and for an Anti-Suit Injunction ¶¶ 8-10.

considerable inconvenience in shuttling witnesses between the venues for these two actions.  Furthermore, one of the purposes of including a binding arbitration clause in a contract is to avoid extensive and expensive litigation.  Forcing Stolt to pursue parallel litigation in Brazil while arbitrating the same issues in New York would likely impose unreasonable and unnecessary costs.  *Fifth*, as both courts have *in personam* jurisdiction over the parties, there is no particular threat to this Court's jurisdiction.  However, given that the four other *China Trade* factors weigh in favor of an injunction, Stolt's petition to enjoin the Respondents' action in Brazil is granted.

### E. Sanctions

Stolt requested in its petition that this Court award Stolt "costs and attorneys' fees for this Petition . . . ."[56]  Although Stolt does not make explicit under what rule of law it requests relief,[57] the only authority cited in support of Stolt's request, *Bartels Dental Books Co. v. Schultz*, concerns Rule 11 sanctions.[58]  Stolt has not, however, made a motion for sanctions "separately from other motions and requests" in accordance with Rule 11(c)(1)(B).[59]  Although this Court

---

[56] Petition at 11.

[57] *See* 5/4/11 Stolt's Reply to Respondents' Letter-Brief at 9.

[58] 786 F.2d 486, 491 (2d Cir. 1986).

[59] Fed. R. Civ. P. 11(c)(1)(B).

has the power to issue a show cause order on its own initiative, because "show cause orders will ordinarily be issued only in situations that are akin to contempt of court . . . ."[60] such an order is not appropriate here. Stolt is, of course, free to bring a separate motion for sanctions, but because it has not done so, I do not reach the merits of whether the conduct of Respondents or their attorney merits sanctions. Stolt's request for imposition of costs and attorneys' fees is therefore denied.

## V. CONCLUSION

For the reasons set forth above, the petition to compel arbitration, and to enjoin Respondents' Brazilian action until the conclusion of arbitration, is granted. Petitioner's request for impositon of costs and fees is denied. The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
June 16, 2011

---

[60] Fed. R. Civ. P. 11, 1993 Advisory Committee Note.

**- Appearances -**

**For Petitioner:**

Don P. Murnane, Jr., Esq.
Manuel A. Molina, Esq.
Freehill Hogan & Mahar LLP
80 Pine Street
New York, New York 10005
(212) 425-1900

**For Respondents:**

Lawrence Caruso Glynn, Esq.
Caruso Glynn, LLC
53-04 193rd Street
Fresh Meadow, New York 11365
(718) 570-3338